UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL DONNELLY,

                    Plaintiff,          Civil Action No. 18-10746
                                        Honorable George Caram Steeh
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 12]

Plaintiff Paul Donnelly ("Donnelly") brings this action pursuant to 42 U.S.C.

§ 405(g), challenging the final decision of Defendant Commissioner of Social

Security ("Commissioner") denying his application for Disability Insurance Benefits

("DIB") under the Social Security Act (the "Act"). Both parties have filed summary

judgment motions (Docs. #11, #12), which have been referred to this Court for a

Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence

supports the Administrative Law Judge's ("ALJ") conclusion that Donnelly is not

disabled under the Act.    Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #12**) be **GRANTED**, Donnelly's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Donnelly previously worked as a Coca Cola delivery driver, delivering and stocking cans of pop.  (Tr. 47-48).  In 2012, he injured his knee while working.  (Tr. 298).  This marked the beginning of ongoing and consistent knee pain, and the need for multiple knee surgeries in the coming years.  At the hearing, Donnelly testified that he has "had three knee replacements, and a broken femur, all on [his] right side." (Tr. 50).  His last major surgery was in August 2015.  (*Id.*).  Although the "last one [] helped," and he no longer experienced "the outside pain," Donnelly was still experiencing ongoing "inside pain," even through the date of the hearing.  (Tr. 52). If he's walking, "every once in a while, [his] leg will kind of give out."  (*Id.*). Therefore, Donnelly testified that he can only walk for 10 or 15 minutes, and only stand for 10 or 15 minutes, due to the pain.  (Tr. 52-53).  Nonetheless, as of the date of the hearing, he was not using an assistive device to stand or walk, nor was he taking any prescription medication.  (*Id.*).  He testified that he can only sit for "an hour or two," and then he has to prop his knee up to take pressure off."  (Tr. 54).  He

tries "to walk a little bit," but had not biked in the six or eight months before the hearing, since he was in physical therapy.  (Tr. 54-55).  Donnelly lives alone, has a valid driver's license, and drives on a regular basis.  (Tr. 46).

Donnelly alleges disability as a result of his knee condition, with an amended alleged onset date of November 1, 2014.  (Tr. 164).  He applied for DIB on March 3, 2015, and was initially denied on May 21, 2015.  (Tr. 101-105).  He then requested a hearing, which was held before Administrative Law Judge ("ALJ") Margaret O'Donnell on February 7, 2017.  (Tr. 41-64).  At the hearing, Donnelly, represented by attorney Aaron Lemmens, testified, as did impartial vocational expert ("VE") Judith Vendora.  (Tr. 60).  The VE testified that, after reviewing the evidence and listening to the testimony, a hypothetical individual with Donnelly's RFC, age, education and experience could not perform his past work.  (Tr. 60-61).  But, the VE then testified there were other jobs such an individual could perform, such as a cashier, clerk, and sorter.  (Tr. 60-63).

On March 22, 2017, the ALJ issued a decision denying Donnelly disability benefits, finding him not disabled under the Act, which Donnelly then appealed.  (Tr. 23-40, 1-7).  The Appeals Council denied Donnelly's request, and Donnelly filed the instant case thereafter.  (Doc. #1).

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Donnelly is not disabled under the Act. At Step One, the ALJ found that Donnelly had not engaged in substantial gainful activity since the alleged onset date. (Tr. 28). At Step Two, the ALJ found that Donnelly has severe impairments of status/post right lower extremity fracture and multiple surgeries. (*Id.*). At Step Three, the ALJ found Donnelly's impairments do not meet a listed impairment. (*Id.*). The ALJ then assessed Donnelly's residual functional capacity ("RFC"), concluding that he is capable of performing light work, except that he can only "lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently; he can sit up to 6 hours out of 8 hours, but can stand and/or walk only up to 4 hours out of 8; can do no more than occasional right lower extremity pushing/pulling as in the operation of foot controls; can occasionally climb, balance, and stoop. He can crawl, crouch, and kneel, but not more than occasionally in combination. He must avoid concentrated exposure to vibration and avoid all exposure to unprotected heights and to uneven,

shifting, obstructed, or slippery terrain." (Tr. 29). At Step Four, the ALJ found he was unable to perform any past relevant work. (Tr. 34). Finally, at Step Five, considering Donnelly's age, education, work experience, RFC, and the VE's testimony, the ALJ found there are jobs that exist in significant numbers in the national economy that Donnelly can perform. (Tr. 34-35).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to

an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D.    Analysis

In his motion for summary judgment, Donnelly argues that the ALJ's RFC is unsupported by substantial evidence because: (1) the ALJ impermissibly substituted her judgment for that of medical doctors; and (2) her finding that Donnelly is capable of performing "light" work is erroneous.  Each issue is addressed below.

*1. The ALJ Did Not Substitute Her Judgment for that of the Medical Doctors*

In formulating Donnelly's RFC, the ALJ considered and relied upon seven medical opinions. She assigned relative weight to each opinion, properly explaining her reasoning, and ultimately, declined to give controlling weight to any opinion. She considered medical opinions from the following doctors: Alyce Metoyer, D.O., state agency medical consultant; Ajay Srivastava, M.D., orthopedic specialist; Nandan Shah, M.D.; Matthew Perdue, M.D.; Trevor Wahlquist, M.D.; Andrew Gray Uruhart, M.D.; and John Blaha., M.D., orthopedic specialist. (Tr. 33). The ALJ gave little weight to the opinions of Dr. Srivastava and Dr. Shah because those opinions preceded Donnelly's alleged onset date, "appeared to be temporary in nature and were in the immediate post-injury and post-operative periods," and "[e]vidence not available [] at the time they provided their opinions and reports, including the medical evidence of healing, stability, normal motion, strength and function [] and [Donnelly's] activities [] reveal that [Donnelly] is not as limited as they determined during the relevant time period/period at issue." (Tr. 33). The ALJ gave some weight to the opinions of Drs. Perdue, Wahlquist, Urquhart, and Blaha, because they "appeared to provide for temporary restrictions in relation to post-operative recovery from the December 11, 2014 surgery [and] August 17, 2015 surgical intervention." (*Id.*). The ALJ described, "while the recommendations [] were appropriate temporary restrictions to allow recovery from [Donnelly's] two

8

aforementioned surgeries, the later medical evidence and level of [Donnelly's] activities does not suggest he remained as limited as these medical providers indicated." (Tr. 33).  Finally, the ALJ gave partial weight to the opinion of the state agency medical consultant, Dr. Metoyer, as "evidence not available to [her] at the time she provided her assessment reveals that [Donnelly] is somewhat more limited in length of standing and/or walking than she indicated."  (Tr. 33).

Donnelly now argues that "the ALJ's RFC represents the impermissible substitution of her judgment for that of the medical doctors."  (Doc. #11 at 13). Specifically, Donnelly argues,

> In this case, the ALJ herself noted that the medical record was of little or no assistance in her ultimate formulation of plaintiff's RFC…it would appear that the ALJ simply crafted limitations on her own, without the assistance from the medical sources.  She herself indicated that none had offered an opinion she considered a reliable indicator of the appropriate restrictions.  In other words, the medical records did not lend themselves to 'neat lay interpretation,' *Choate, supra* [] and were not 'clear' and 'undisputed,' *Wyatt, supra* [] that the ALJ could render her own independent findings as to [Donnelly's] RFC.

(Doc. #11 at 14).

As a preliminary matter, it is well-established that when evaluating the claimant's RFC, the ALJ is not required to base her RFC findings entirely on a physician's opinion.  *See, e.g.*, *Mokbel-Aljahmi v. Comm'r of Soc. Sec.,* 732 F. App'x 395, 401-02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial

evidence unless a physician offers an opinion consistent with that of the ALJ.")
(citing *Shepard v. Comm'r of Soc. Sec.*, 705 Fed.Appx. 435, 442–43 (6th Cir. 2017)
("An RFC is an 'administrative finding,' and the final responsibility for determining
an individual's RFC is reserved to the Commissioner.")).[1]

Donnelly's argument that "the ALJ impermissibly substituted her judgment
for that of the medical doctors" lacks merit.  Although it is well established that the
ALJ may not substitute his medical judgment for that of the claimant's physicians,
*see Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009), here,
there is no indication the ALJ made any such error.  Donnelly does not point to any
specific portion of the ALJ's analysis which allegedly reflects her "substitut[ing] her
judgment for that of the medical doctors."  (*Id.* at 15).  He seems to take issue with
the relative weight given to numerous doctors' opinions, and the resulting RFC
determination.  But, "an ALJ does not improperly assume the role of a medical
expert by assessing the medical and non-medical evidence before rendering a
residual functional capacity finding."  *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx.
149, 157 (6th Cir. 2009).  That is what the ALJ did here.  Thus, there is no error.

---

[1] In response to this point, Donnelly argues that his contention "is not an argument [ ] that the
ALJ's RFC conclusions must be based upon a single doctor's opinions.  Instead, it is an argument
that the RFC must at least be based upon the medical record."  (Doc. #13 at 5).  Clearly, then,
Donnelly's argument assumes that the ALJ's RFC is unsupported by the record.  This, however,
is distinct from his argument that the ALJ impermissibly substituted her judgment for that of
medical doctors.  It will, therefore, be addressed separately, *infra* in Section 2.

Donnelly's next contention that "the ALJ simply crafted limitations on her own, without assistance from the medical sources" is inaccurate, and unpersuasive. As mentioned, the ALJ had the assistance of seven medical doctors' opinions. She relied on many of those opinions in formulating the RFC; she gave some weight to the opinions of Drs. Perdue, Wahlquist, Urquhart, and Blaha; partial weight to the opinion of Dr. Metoyer; and little weight to the opinions of Dr. Ajay Srivastava and Dr. Nandan Shah. (Tr. 33). Again, this is not a case in which the ALJ relied on no medical opinion whatsoever. *See, e.g., Norgren v. Comm'r of Soc. Sec.*, No. 14-12417, 2015 WL 5026173, at *11, n. 14 (E.D. Mich. Aug. 25, 2015) (rejecting claimant's argument that the ALJ formulated an RFC without the assistance of a medical source, as the ALJ gave some, albeit not controlling weight, to a medical source opinion).

Because the ALJ here relied on (in part) several medical opinions, the case law and legal principles Donnelly cites are inapplicable. For example, Donnelly relies on *Choate v. Comm'r of Soc. Sec.*, No. 17-10096, 2018 WL 1354471, at *11 (E.D. Mich. Feb. 24, 2018), *report and recommendation adopted*, No. 17-10096, 2018 WL 1326293 (E.D. Mich. Mar. 15, 2018). But in *Choate*, the issue was that the record contained *no* medical equivalency opinion, and the court remanded *sua sponte* finding the lack of one constituted an "obvious and significant" Step Three error. (*Id.* at *8-9). Here, however, such an opinion is contained in the record (Tr.

92-100), and Donnelly does not even allege that his impairments satisfy or are equivalent to any Listing, nor that the ALJ committed a Step Three error.  (Tr. 29) (ALJ noting that Donnelly does not assert "that [he] has an impairment that meets or medically equals a listing . . .").

Donnelly also quotes *Wyatt v. Comm'r of Soc. Sec.*, No. 12–11406, 2013 WL 4483074, at *16-17 (E.D. Mich. August 19, 2013), for its reasoning that "Only 'when the medical evidence is so clear, and so undisputed' is an ALJ justified in formulating an RFC without the assistance of a medical source."  But *Wyatt* is not instructive here because, as discussed above, the ALJ gave good reasons for the weight given to each medical opinion, and then properly determined an RFC.  *See Norgren*, No. 14-12417, 2015 WL 5026173, at *11 (distinguishing claimant's case from *Wyatt*, noting, "In the instant case [] the ALJ gave weight to Dr. Junn's November 2012 opinion, albeit not controlling weight with respect to each functional limitation.  This is not a case in which the ALJ formulated an RFC 'without the assistance of a medical source.'").

Finally, although Donnelly accuses the ALJ of making "independent findings as to [his] RFC," the ALJ is indeed entitled to make such findings as long as substantial evidence supports her decision.  The "RFC determination is an administrative finding reserved to the Commissioner."  *See* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such

as… your residual functional capacity, the final responsibility for deciding these issues is reserved to the Commissioner."). Here, the ALJ provided proper reasons for the weight given to each doctor's opinion, weighed all evidence carefully, and formed an RFC based on both medical and non-medical evidence. The ALJ relied strongly on the fact that many of the doctor's opinions were issued right after Donnelly's surgeries, and this presents a good reason to give them reduced weight in terms of a longer-term RFC. For example, in September 2015, Dr. Blaha noted Donnelly's pain, attempts to improve his range of motion, and use of a walker as an assistive device. (Tr. 687). Dr. Blaha instructs Donnelly to "continue to elevate and ice properly as needed," and "continue to use his walker for 2 weeks and then transition to a cane." (*Id.*). That same opinion reflects that Donnelly was "advised that he may now shower, however, no lotions, bathing, or submerging knee in water until incision is completely sealed." (*Id.*). It is clear that the opinion is time limited, for only a short, post-operative timeframe. As the ALJ accurately noted, the other opinions reflect similar temporary restrictions. (Tr. 33). She therefore properly fulfilled her obligation to consider the opinions, and align the RFC accordingly, considering all evidence of record. *See Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

In short, because the ALJ provided good reasons for the weight given to the various medical opinions, the Court rejects Donnelly's argument that the ALJ impermissibly substituted her judgment for that the of medical doctors.

2. *The RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ found that Donnelly was capable of the following RFC:

> [Donnelly] can lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently; he can sit up to 6 hours out of 8 hours, but can stand and/or walk only up to 4 hours out of 8; can do no more than occasional right lower extremity pushing/pulling as in the operation of foot controls; can occasionally climb, balance, and stoop. He can crawl, crouch, and kneel, but not more than occasionally in combination. He must avoid concentrated exposure to vibration and avoid all exposure to unprotected heights and to uneven, shifting, obstructed, or slippery terrain.

(Tr. 29).

In formulating the RFC, the ALJ thoroughly reviewed Donnelly's complaints and record evidence. (Tr. 29-34). For instance, the ALJ accurately, and in detail, explained Donnelly's long history of his right knee pain, and his multiple knee surgeries. (Tr. 30-33). The ALJ described how Donnelly initially underwent a "failed unicompartmental knee arthroplasty which was revised to a right tricompartmental knee arthroplasty in October 2013. He did well, and returned to work in March 2014." (Tr. 30). A month later, as the ALJ explained, Donnelly "was found to have a periprosthetic femur fracture. He underwent open reduction internal

14

fixation surgery, and did well until the fall of 2014." (*Id.*). Then, "on December 11, 2014, [Donnelly] underwent additional surgical intervention to remove right femur hardware." (Tr. 31). The ALJ explained Donnelly's temporary improvement thereafter, including when, at a follow-up visit in late December 2014, he "said his pain was much improved," he was "overall doing pretty well" in late January 2015, and "[b]y early March 2015, [he] was reporting to Dr. Perdue that his pre-operative pain had resolved." (Tr. 31). But then, as the ALJ noted, progress was stalled. (Tr. 32). Donnelly was then "prescribed physical therapy to work on range of motion, strengthening, and gait training," and was given post-operative restrictive limitations. (*Id.*). He then exhibited varied progress, with some healing, but some reports of increased pain. (*Id.*). As the ALJ accurately noted, in March 2016, he underwent "nerve block injections for his right saphenous neuropathy. It was noted that he responded to the nerve blocks with temporary resolution of his pain symptoms." (Tr. 33). The ALJ then explained Donnelly's symptoms as of May 2016, as well as details within those most recent medical records. (*Id.*). Finally, the ALJ acknowledged Donnelly's subjective reports of his current pain and limitations, but found his "allegations are inconsistent with other evidence." (Tr. 34). Specifically, the ALJ noted the following:

> [Donnelly] indicated he could generally do the following: live alone in a house; feed his dog and take it to the dog park; take care of his personal care activities; prepare meals; do some household chores (cleaning and laundry); drive a car; shop in stores; drive to

visit his mother at her home and drive her around if she needs
something; do some exercising; watch television; help mow his
law with a push mower; go to Back to The Bricks; and dust his car
off as well as wash it.  He testified that he has not taken any
medications stronger than Ibuprofen or used a cane or other hand-
held device since shortly after his last surgery in August 2015.  [ ]
Moreover, none of his alleged symptoms prompted him to seek
frequent emergency room care.

(*Id.*).

Donnelly challenges the ALJ's RFC finding, contending that "[t]here is
nothing in the record that suggests that [he] could stand for four hours, as opposed
to two hours or even one.  Nor is there the slightest indication in the medical record
that a claimant who has undergone such a significant number of knee procedures
was capable of even occasional crawling, crouching, or kneeling, whether or not in
combination."  (Doc. #11 at 15).

Preliminarily, Donnelly, as claimant, bears the burden of proving a lack of
RFC.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).
Donnelly has failed to meet his burden here, as he does not point to any record
evidence showing a lack of his RFC.  Although he references his "significant number
of knee procedures," this alone, at most, shows he has an ongoing knee condition; it
does not contradict the ALJ's RFC.  Further, Donnelly ignores the evidence the ALJ
relied upon in forming the RFC, such as the medical records indicating progress, his
activities of daily living, and the fact that he did not use an ambulatory device, take
prescription medication, or seek frequent emergency care for his knee.

16

The Court also notes in November 2015, Dr. Blaha wrote, "[m]y impression is the revision total knee arthroplasty seems to be doing well and nothing about the evaluation suggests that the pain is from the components." (Tr. 691). The notes further reflect that Donnelly indicated that although "his pain continues," he had recently finished formal PT and was shown to have "great motion and walks well." (Tr. 690). Some of Donnelly's treatment notes (after his post-operative periods) also indicate he was to "continue activities as tolerated," which certainly does not conflict with the severely limited RFC adopted by the ALJ. (*See, e.g.*, Tr. 690, 1015).

Other treatment notes reflect intermittent, yet varied, progress. For example, in May 2015, Donnelly reported that "his pain is much better...he could do more with less pain while wearing the brace," but "[h]e is not wanting to continue to wear the brace and would be happy with this amount of improvement as an outcome from a revision surgery. (Tr. 669). He was then advised of a 60-70% success rate with the revision surgery, with no guarantees, and the explicit instruction that "he will be off work for at least 3 months after this surgery and we will assess him in the post-op period." (Tr. 669). He chose to proceed with the surgery. But, he did not appear to provide any updated functional assessment or limitations *after* the 3 month period following the surgery.

All of the above evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241

(internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip*, 25 F.3d at  286.  Therefore, the mere fact that the record contains evidence supporting Donnelly's position does not mean the ALJ erred.

Lastly, any suggestion by Donnelly that there need be an affirmative piece of record evidence on which the ALJ relies showing that he can stand for four hours lacks merit.  The ALJ engaged in an even and comprehensive review of Donnelly's knee conditions, his surgeries, pain, setbacks, and improvements.   She also considered Donnelly's daily activities, and weighed his credibility and the evidence, as is her obligation, and fashioned an RFC accordingly.  As Donnelly does not point to any evidence contradicting the RFC, nor does he point to any evidence the ALJ ignored or mischaracterized, substantial evidence supports her decision, and it should not be disturbed.

3. *The ALJ's Finding that Donnelly Was Capable of Light Work is Supported by Substantial Evidence*

The ALJ found that Donnelly could perform light work, with additional limitations, including the ability to "lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently;" "sit up to 6 hours out of 8 hours, but can stand and/or walk only up to 4 hours out of 8;" "no more than occasional right lower extremity pushing/pulling as in the operation of foot controls;" "can

occasionally climb, balance, and stoop [;] crawl, crouch, and kneel, but not more than occasionally in combination."  (Tr. 29).  It is undisputed that this RFC "fell between the requirements for the full ranges of light and of sedentary work."  (Doc. #12 at 11).  SSR 83-10 describes light work as follows:

> *Light work*. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs.  A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances).  Relatively few unskilled light jobs are performed in a seated position.

SSR 83-10 (S.S.A. 1983).

Relatedly, SSR 83-12 provides,

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability.  The adjudicator will consider the extent of any erosion of the occupational base and access its significance.  In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base.  In cases of considerably greater restriction(s), the occupational base will obviously be affected.  In still other instances, the restrictions of the occupational base will be less obvious.

> Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. . . Vocational experts may testify for this purpose at the hearing and appeals levels.

SSR 83-12 (S.S.A. 1983).

Donnelly argues that "he cannot perform a wide range of light work," because his RFC more closely corresponds to sedentary work. (Doc. #11 at 17). According to Donnelly, "if this Court believes that this is a situation which falls 'in the middle' between the light and sedentary exertional levels, [he] should still prevail," pursuant to SSR 83-10 and 83-12. (*Id.* at 18). This argument, however, is partly premised on Donnelly's contention that he cannot perform "substantially all" of light work activities, because "[h]e cannot do a great deal of standing or walking, nor can he sit most of the time operating foot or leg controls." (*Id.*). Thus, he is, essentially, asking this Court to re-weigh the evidence in his favor, find a lack of substantial evidence supporting his RFC, and instead find him limited to only sedentary work. However, for the reasons explained above, substantial evidence does support the RFC.

The question, then, becomes whether the ALJ's RFC restricting Donnelly to only a limited range of light work is erroneous. Numerous courts have rejected arguments like Donnelly's. For example, in *Bickham v. Comm'r of Soc. Sec.*, this Court explained, "simply because the ALJ found Bickham incapable of a *full* range of light work does not mean he found her only able to perform sedentary work—the ALJ plainly limited Bickham to a *limited* range of light work." No. 16-CV-13302,

20

2017 WL 2118000, at *8 (E.D. Mich. May 15, 2017) (emphases in original).

Ultimately, in *Bickham*, the court held that limiting the claimant to a restricted range

of light work, as opposed to sedentary work, "does not alone support finding error

in the ALJ's conclusions." *Id.* Additional error, such as error in the RFC, would

need to exist to require remand. Similarly, in *Blankenship v. Comm'r of Soc. Sec.,*

the Sixth Circuit rejected the claimant's argument that "because she could not

perform a full range of light work, she must necessarily have only been able to do

sedentary work." 624 F. App'x 419, 429 (6th Cir. 2015).[2]

As the Commissioner persuasively argues, the statutory authorities on which

Donnelly relies merely describe the "full or wide range of light work," and say

"nothing about whether the limitations in the RFC prohibit any range of light work."

(Doc. #12 at 12-13). In his response brief, Donnelly explains, "the other cases cited

by defendant seem to fail to grasp [] the critical nature of the initial classification of

a claimant's exertional abilities…ALJs should therefore be required to render

accurate initial classifications in accordance with the regulations and rulings rather

than allowing them to bend those classifications to fit the result they wish to reach."

---

[2] The Commissioner cited a number of other cases which reached similar conclusions. (Doc. #12 at 12-13) (citing *Blackburn v. Berryhill*, No. 7:16-cv- 217-JMH, 2017 WL 6030465, at *4 (E.D. Ky. Dec. 5, 2017); *Icke v. Comm'r of Soc. Sec.*, No. 1:126-cv-1208, 2017 WL 2426246, at *6 (N.D. Ohio May 16, 2017); *Mathis-Caldwell v. Comm'r of Soc. Sec.*, No. 1:15- cv-532, 2016 WL 2731021, at *5 (W.D. Mich. May 11, 2016); *Greenhaw v. Comm'r of Soc. Sec.*, No. 4:13-cv-40, 2014 WL 4168508, at *14 (E.D. Tenn. Aug. 20, 2014) ("[T]he ALJ's determination that Plaintiff has the RFC to perform light work with certain limitations, *including a maximum of four hours of standing and walking in an eight-hour day*, is proper." (emphasis added))).

(Doc. #13 at 6).  While the Court agrees that ALJs should not engage in the type of result-driven RFC gerrymandering described by Donnelly, he fails to specify how the ALJ "bent" the regulations in this case, beyond his repeated unpersuasive argument that the RFC adopted by the ALJ is not supported by substantial evidence. Accordingly, the instant case compels the same conclusion as *Bickham* and *Blankenship*: the ALJ did not err in this respect.

Donnelly also contends,

> If this Court instead finds that this case falls 'in the middle' of competing exertional levels, it should find that the record does not support a finding of light work.  SSR 83-10 [sic] suggests that vocational testimony should be consulted in such an instance. However, the ALJ somewhat preempted that analysis, because she did not ask the VE whether the occupational base for light would be significantly limited for an individual who is restricted as is plaintiff.  Instead, she simply asked the VE to assume that plaintiff was capable of light work.

(Doc. #11 at 19).

But Donnelly mischaracterizes the ALJ's questioning of the VE.  In fact, the ALJ did not "simply ask[] the VE to assume that plaintiff was capable of light work." Rather, the ALJ specified Donnelly's *additional limitations* in her question to the VE:

> [ALJ]: Please assume that we have an individual, who was a younger individual at the alleged onset date, with a high school education and the past work described, who can lift, carry, push and pull up to about 20 pounds occasionally, up to 10 pounds frequently.  The individual can sit up to six of eight hours but stand and/or walk only four of eight hours.  The individual should do no

more than occasional right lower extremity pushing, pulling, as in the operation of foot controls.  The individual can occasionally climb, balance, and stoop.  The individual can crawl, crouch, and kneel, but, cannot do this more than occasionally in combination. The individual must avoid concentrated exposure to vibration and must avoid all exposure to unprotected heights, and uneven, shifting, obstructed, or slippery terrain.  Can an individual perform the past work?

[VE]: No.

[ALJ]: Are there other jobs such individual could perform?

[VE]: Yes.   There are  [ ]  cashiers…administrative support clerks…[and] sorters.

(Tr. 61).

The VE then testified there were no inconsistencies with her testimony and the DOT, although the DOT does not specifically address how many hours somebody is sitting or standing.  The ALJ, then, properly complied with SSR 83-10 and SSR 83-12.  There is no persuasive indication to the contrary.

In sum, for all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence, and that Donnelly has not shown that the ALJ failed to follow the appropriate regulations in rendering her decision.  Thus, the ALJ's decision should be upheld.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the

Commissioner's Motion for Summary Judgment (**Doc. #12**) be **GRANTED**,

Donnelly's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and the ALJ's

decision be **AFFIRMED**.

Dated: January 29, 2019              s/David R. Grand
Ann Arbor, Michigan                  DAVID R. GRAND
                                     United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and

Recommendation and Order, any party may serve and file specific written objections

to the proposed findings and recommendations and the order set forth above.  *See* 28

U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to

timely file objections constitutes a waiver of any further right of appeal.  *See Thomas

v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir.

2005).  Only specific objections to this Report and Recommendation will be

preserved for the Court's appellate review; raising some objections but not others

will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co.*

*v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 29, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager